Christopher A. Seeger
Shauna B. Itri
**SEEGER WEISS LLP**
55 Challenger Road 6th Fl.
Ridgefield Park, NJ 07660
Tel.: (973) 639-9100
Fax: (973) 679-8656
cseeger@seegerweiss.com
sitri@seegerweiss.com

*Attorneys for Plaintiff and the putative Class*

[*Additional Attorneys on Signature Page*]

### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIAM LYTLE, MARICRUZ JIMENEZ, and CARSON NOEL,<br><br>      Plaintiffs,<br><br>v.<br><br>TRIZETTO PROVIDER SOLUTIONS, LLC, a Missouri Corporation, COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION, a New Jersey Corporation,<br><br>      Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

PARTIES .............................................................................................................................. 3

    Plaintiffs ......................................................................................................................... 3

    Defendants ...................................................................................................................... 9

JURISDICTION AND VENUE ......................................................................................... 10

FACTUAL ALLEGATIONS .............................................................................................. 11

    A.   Defendants Collect, Store, and Improperly Maintain Patients' Private Information........ 11

    B.   The Data Breach and Defendants' Inadequate Notice to Plaintiffs and Class Members.. 14

    C.   The Healthcare Sector Is Particularly Susceptible to Data Breaches ............................... 15

    D.   Defendants Failed to Comply with HIPAA ..................................................................... 19

    E.   Defendants Failed to Comply with FTC Guidelines........................................................ 22

    F.   Defendants Failed to Comply with Industry Standards .................................................... 23

    G.   Defendants Breached Their Duty to Safeguard Private Information................................. 24

    H.   Defendants Should Have Known That Cybercriminals Target Private Information to Carry Out Fraud and Identity Theft ................................................................................. 26

    I.   Plaintiffs and Class Members Have Suffered Common Injuries and Damages ............... 31

CLASS ACTION ALLEGATIONS .................................................................................... 36

CLAIMS FOR RELIEF ..................................................................................................... 40

    Count I–Negligence ..................................................................................................... 40

    Count II–Negligence *per se* ......................................................................................... 44

    Count III– Breach of Third-Party Beneficiary Contract .............................................. 46

    Count IV–Breach of Implied Contract......................................................................... 47

    Count V–Unjust Enrichment....................................................................................... 51

    Count VI–Breach of Confidence ................................................................................. 53

    Count VII–Breach of Fiduciary Duty ......................................................................... 55

    Count VIII–Invasion of Privacy.................................................................................. 58

    (On behalf of the Nationwide Class) ........................................................................... 58

    Count IX–Declaratory Judgment ................................................................................ 59

    Count X–Violation of the Arizona Consumer Fraud Act,  A.R.S. §§ 44-1521, *et seq.* (On behalf of the Arizona Subclass) ........................................................................... 60

Count XII–Violation of the California Consumer Privacy Act, Cal. Bus. & Prof. Code §§ 1798.150, *et seq.* ("CCPA")................................................................................................ 63

Count XIII–Violation of the California Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56, *et seq.* ("CMIA") ................................................................................ 65

Count XIV–Violation of the California Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.* .................................................................................................................................. 66

Count XV–Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17000 *et seq.* ......................................................................................................................... 67

PRAYER FOR RELIEF ............................................................................................................. 70

DEMAND FOR JURY TRIAL ................................................................................................... 71

Plaintiffs Liam Lytle, Maricruz Jimenez and Carson Noel, individually and on behalf of similarly situated individuals, bring this Class Action Complaint against Defendants TriZetto Provider Solutions, LLC ("TriZetto") and Cognizant Technology Solutions Corporation ("Cognizant" and together with TriZetto, "Defendants"). Plaintiffs make these allegations based upon personal knowledge of the facts pertaining to Plaintiffs and on information and belief as to all other matters derived from, among other things, investigation by counsel and review of public documents.

## INTRODUCTION

1.      TriZetto Provider Solutions is a Cognizant company offering comprehensive Revenue Cycle Management (RCM) tools for healthcare providers, automating everything from patient eligibility checks and claims submission to denial management and patient payments. TriZetto claims that its services help hospitals and practices streamline operations, reduce administrative burdens, improve cash flow, and enhance patient experiences through digital solutions and extensive payer connectivity.[1] As of 2020, TriZetto claimed to have processed over 2.5 billion healthcare transactions and handled over $1 billion in Accounts Receivable.[2]

2.      TriZetto Health Solutions is a wholly owned subsidiary of Cognizant.

3.      As part of providing its services, TriZetto receives extremely sensitive personal and medical information entrusted to it by patients and their physicians, hospitals and insurers. Among the information it obtains are names of patients, information about their health, Social Security numbers, addresses, dates of birth, health insurance member numbers, health insurer names, information on primary insured persons and their dependents, and other personally identifiable information ("PII") and protected health information ("PHI" and collectively with PII, "Private

---

[1] *See* https://www.trizettoprovider.com/who-we-are/our-story (last accessed Dec. 21, 2025)
[2] *See id.*

1

Information").

4.     As a healthcare-related information services provider and given the sensitivity of the extremely private information with which it was entrusted, TriZetto had a non-delegable duty to protect patients' Private Information and to promptly notify patients in the event that Private Information was exposed or lost.

5.     TriZetto failed to meet its duty, leading to a massive data breach, lasting between approximately November 2024 to at least October 2, 2025, that compromised the extremely sensitive Private Information entrusted to it by patients and their healthcare providers.

6.     TriZetto has released little information about the incident. According to the company, TriZetto identified suspicious activity on its systems on October 2, 2025. After engaging an external vendor for assistance, TriZetto determined that a data breach had occurred that compromised patients and insured persons' Private Information. TriZetto has reported that the data breach lasted from November 2024 to October 2, 2025 (The "Data Breach").

7.     The total number of individuals affected remains unconfirmed, but the patient data stolen includes patients' Private Information. Despite its knowledge of the Data Breach, TriZetto has not acted to promptly notify patients that their Private Information was compromised in the breach.

8.     The insurers and healthcare providers who utilized TriZetto have a non-delegable duty to protect their patients' Private Information and to promptly notify patients if a breach occurs. Yet even after they received notice of the Data Breach from TriZetto, TriZetto's healthcare provider clients delayed patient notifications.

9.     As a result of the Data Breach and Defendants' failure to provide proper notification, Plaintiffs and Class members face an imminent and substantial risk of fraud, identity

theft, and other harms caused by the unauthorized disclosures of their Private Information—a risk that may last for the rest of their lives. Plaintiffs and Class members must devote time, money, and energy to protect themselves, to the extent possible, from these harms.

10.     Plaintiffs bring this action on behalf of themselves, and all others similarly situated whose Private Information was exposed in the Data Breach. Plaintiffs seek to hold Defendants accountable for their reckless disregard for patient privacy, failure to timely notify affected individuals, and failure to take adequate steps to mitigate the ongoing harm resulting from the Data Breach, all of which injured and continues to injure Plaintiffs and Class members.

11.     Through this action, Plaintiffs seek compensatory damages, exemplary damages, statutory damages, equitable relief including improved data security practices, identity protection and credit monitoring services, and all other relief this Court deems just and appropriate to redress Defendants' unlawful conduct and to prevent such harm from recurring.

## PARTIES

### Plaintiffs

### *Liam Lytle*

12.     Plaintiff Liam Lytle is a Rhode Island Resident and a member of Blue Cross Blue Shield of Rhode Island, one of TriZetto's health insurance provider clients. Plaintiff was required to provide personal information, including but not limited to his name, address, date of birth, Social Security number, financial account information, and medical information, in connection with TriZetto's services contracted by his health insurer.

13.     Plaintiff typically takes measures to protect his Private Information and is very careful about sharing his Private Information. He securely stores documents containing his Private Information and diligently chooses unique usernames for his passwords and online accounts.

14.     In entrusting his Private Information to Defendants, Plaintiff believed that, as part

of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect his PII/PHI, including only contracting with third party vendors who would adequately protect his PII/PHI.

15.    Had Plaintiff Lytle known that Defendants did not utilize reasonable data security measures, he would not have entrusted his Personal Information to Defendants.

16.    At the time of the Data Breach, TriZetto retained Plaintiff Lytle's Private Information on its network with inadequate data security in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

17.    As a direct and proximate result of the Data Breach Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

18.    Plaintiff has been and will be forced to expend considerable time and effort including monitoring his accounts and credit files, changing his online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect himself from identity theft and fraudulent misuse of his Private Information, disclosed as a result of the Data Breach.

19.    In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of his Private Information, a form of intangible property that he entrusted to Defendants for the sole purpose of obtaining medical services.

20.    Furthermore, Plaintiff Lytle has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of his Private Information in the Data

Breach. Plaintiff fears for his personal medical data and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of his Private Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

21.     Moreover, Plaintiff's Private Information that was compromised in the Data Breach has already been misused, evidenced by the significant increase in spam emails and phone calls using his Private Information that he has received since the Data Breach.

22.     As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as his Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

23.     Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiffs to the imminent prospect of additional harm.

***Maricruz Jimenez***

24.     Plaintiff Maricruz Jimenez is a California resident, domiciled in California. Plaintiff is insured through San Francisco Health Plan, one of TriZetto's health insurance provider clients. Plaintiff was required to provide personal information, including but not limited to her name, address, date of birth, Social Security number, financial account information, and medical information, in connection with TriZetto's services contracted by her health insurer.

25.     Plaintiff typically takes measures to protect her Private Information and is very careful about sharing her Private Information. She securely stores documents containing her Private Information and diligently chooses unique usernames for her passwords and online accounts.

26. In entrusting her Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect her PII/PHI, including only contracting with third party vendors who would adequately protect her PII/PHI.

27. Had Plaintiff Jiminez known that Defendants did not utilize reasonable data security measures, she would not have entrusted her Personal Information to Defendants.

28. At the time of the Data Breach, TriZetto retained Plaintiff Jimenez's Private Information on its network with inadequate data security in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

29. As a direct and proximate result of the Data Breach Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

30. Plaintiff has been and will be forced to expend considerable time and effort including monitoring her accounts and credit files, changing her online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect herself from identity theft and fraudulent misuse of his Private Information, disclosed as a result of the Data Breach.

31. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of her Private Information, a form of intangible property that she entrusted to Defendants for the sole purpose of obtaining medical services.

32.     Furthermore, Plaintiff Jiminez has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of her Private Information in the Data Breach. Plaintiff fears for her personal medical data and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of her Private Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

33.     Moreover, Plaintiff's Private Information that was compromised in the Data Breach has already been misused, evidenced by the significant increase in spam emails and phone calls using his Private Information that she has received since the Data Breach.

34.     As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as her Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

35.     Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiffs to the imminent prospect of additional harm.

***Carson Noel***

36.     Plaintiff Carson Noel is an Arizona resident, domiciled in Arizona. Plaintiff received health care from Tucson Orthopaedic Institute, one of TriZetto's health provider clients. Plaintiffs was required to provide personal information, including but not limited to his name, address, date of birth, Social Security number, financial account information, and medical information, in connection with TriZetto's services contracted by his healthcare provider.

37.     Plaintiff typically takes measures to protect his Private Information and is very careful about sharing his Private Information. He securely stores documents containing his Private Information and diligently chooses unique usernames for his passwords and online accounts.

38.     In entrusting his Private Information to Defendants, Plaintiffs believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect his PII/PHI, including only contracting with third party vendors who would adequately protect his PII/PHI.

39.     Had Plaintiff Noel known that Defendants did not utilize reasonable data security measures, he would not have entrusted his Personal Information to Defendants.

40.     At the time of the Data Breach, TriZetto retained Plaintiff Noel's Private Information on its network with inadequate data security in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

41.     As a direct and proximate result of the Data Breach Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

42.     Plaintiff has been and will be forced to expend considerable time and effort including monitoring his accounts and credit files, changing his online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect himself from identity theft and fraudulent misuse of his Private Information, disclosed as a result of the Data Breach.

43.     In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of his Private Information, a form of intangible property that he entrusted to Defendants for the sole purpose of obtaining medical services.

44. Furthermore, Plaintiff Noel has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of his Private Information in the Data Breach. Plaintiff fears for his personal medical data and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of his Private Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

45. Moreover, Plaintiff's Private Information that was compromised in the Data Breach has already been misused, evidenced by the significant increase in spam emails and phone calls using his Private Information that he has received since the Data Breach.

46. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as his Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

47. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiffs to the imminent prospect of additional harm.

**Defendants**

48. Defendant TriZetto Provider Solutions, LLC ("TriZetto"), is a Missouri corporation with its headquarters and principal place of business at 3300 Rider Trail South, Earth City, MO 63045.

49. Defendant Cognizant Technology Solutions Corporation ("Cognizant") is a New Jersey corporation with its headquarters and principal place of business at 300 Frank W Burr Blvd., Suite 36, 6th Floor, Teaneck, NJ 07666.

50. On information and belief, Cognizant owns TriZetto, so they are a single entity operating under one corporate structure, and therefore share officers and directors. TriZetto is not

an independent, separate company with its own distinct board of directors or executive team.

51.     Cognizant acquired TriZetto in 2014, and TriZetto now operates as the "TriZetto business unit" within Cognizant's healthcare practice.

52.     Also, on information and belief, individuals who were leaders at TriZetto before the acquisition are now executives within the relevant Cognizant business units. For example, Jude Dieterman, formerly TriZetto's President and COO, became the Chief Executive for the TriZetto business unit within Cognizant's healthcare practice.

53.     On information and belief Cognizant's overall strategic direction, including for the TriZetto segment, is managed by the unified Cognizant Board of Directors and executive leadership team. The current Cognizant leadership and board members oversee all of the company's operations, including the healthcare software and solutions provided by the TriZetto portfolio.

<strong><u>JURISDICTION AND VENUE</u></strong>

54.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (i) there are at least 100 Class members, (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of costs and interests, and (iii) at least one Class member is diverse in citizenship from at least one defendant.

55.     This Court has general personal jurisdiction over Cognizant because it maintains its principal place of business in New Jersey and regularly conducts business in the state.

56.     This Court has specific personal jurisdiction over TriZetto and Cognizant because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this district. Additionally, the exercise of personal jurisdiction is proper because TriZetto and Cognizant have purposefully availed themselves of the privileges of conducting business within

10

this district and have established sufficient minimum contacts within the district.

57.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because (i) a substantial part of the events or omissions giving rise to these claims occurred in this district, (ii) TriZetto and Cognizant maintain substantial operations in this district, (iii) the conduct relevant to this action occurred in part within this district, and (iv) TriZetto and Cognizant have harmed Class members residing in this district.

## FACTUAL ALLEGATIONS

**A.    Defendants Collect, Store, and Improperly Maintain Patients' Private Information**

58.     TriZetto is a full-service revenue management service provider to physicians, hospitals, and health systems. Its services and platforms assist healthcare providers and systems with revenue and insurance claim management, including billing, obtaining prior authorizations, claims management, patient responsibility estimations, and medical procedure and diagnosis coding.

59.     Cognizant is TriZetto' parent company, having purchased it in 2014 for $2.7 billion.[3]

60.     As part of providing its services, TriZetto receives extremely sensitive personal and medical information entrusted to it by patients and their physicians and hospitals. Among the information it obtains are names of patients, information about their health, Social Security numbers, addresses, dates of birth, health insurance member numbers, health insurer names, information on primary insured persons and their dependents, and other personally identifiable

---

[3]    Press Release, Cognizant Completes Acquisition of TriZetto (Nov. 20, 2014), https://news.cognizant.com/2014-11-20-Cognizant-Completes-Acquisition-of-TriZetto-Creating-a-Fully-Integrated-Healthcare-Technology-and-Operations-Leader; Bernie Monegain, Sold: Cognizant buys TriZetto for $2.7B, HealthCare IT News (Sept. 15, 2014), https://www.healthcareitnews.com/news/sold-cognizant-buys-trizetto-27b

information ("PII") and protected health information ("PHI" and collectively with PII, "Private Information").

61.     As a healthcare services provider, and given the sensitivity of the extremely private information with which it was entrusted, Defendants had a non-delegable duty to protect patients' Private Information and to promptly notify patients in the event that Private Information was exposed or lost.

62.     Defendants also represented to patients that the Private Information collected from them would be kept safe and confidential.

63.     Due to the highly sensitive and personal nature of the patient information Defendants acquire and store, Defendants promise to, among other things, keep patients' Private Information private; comply with industry standards related to data security and the maintenance of patients' Private Information; inform patients of their legal duties relating to data security; comply with all federal and state laws protecting patients' Private Information; only use and release patients' Private Information for reasons that relate to the services they provide; and provide adequate notice to patients if their Private Information is disclosed without authorization.

64.     By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class members' Private Information, Defendants assumed the legal and equitable duties they owed to Plaintiffs and Class members and knew or should have known that they were responsible for protecting their Private Information from unauthorized disclosure and exfiltration.

65.     As a condition of provision of healthcare services, Defendants collect and maintain highly sensitive patient information, including names, addresses, dates of birth, Social Security numbers, insurance details, medical histories, and treatment records.

66.     Thus, as a condition of receiving medical services from Defendants' customers, or the Healthcare Defendants, patients are required to entrust Defendants with highly sensitive Private Information.

67.     Plaintiffs and Class members relied on Defendants to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this Private Information.

68.     Healthcare providers and insurers contracted with Defendants, to provide EHR and related data services, including the management and migration of patient data.

69.     Defendants had obligations created by contract, industry standards, common law, and representations made to Plaintiffs and Class members to keep Plaintiffs' and Class members' Private Information confidential and to protect it from unauthorized access and disclosure.

70.     Plaintiffs and Class members provided their Private Information to Defendants with the reasonable expectation and mutual understanding that Defendants would comply with their obligations to keep such Private Information confidential, to secure it from unauthorized access, and to provide timely notice of any security breaches.

71.     Defendants did not use reasonable security procedures and practices appropriate to the nature of the Private Information it was maintaining for Plaintiffs and Class Members, causing the exposure of Private Information, such as encrypting the information or deleting it when it is no longer needed.

72.     Defendants' data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

73.     Defendants knew or should have known that their electronic records would be targeted by cybercriminals.

13

74.     Due to Defendants' improper security measures and storage, the attacker accessed and acquired files in Defendants' servers containing unencrypted Private Information of Plaintiffs and Class Members, including, upon information and belief, their names, Social Security numbers, and health and/or clinical information.

**B.      The Data Breach and Defendants' Inadequate Notice to Plaintiffs and Class Members**

75.     In or about November 2024, hackers gained access to Defendants' computer network and accessed protected Private Information.[4]

76.     Defendants claim to have first discovered the unauthorized access of its system on October 2, 2025, nearly a year *after hackers had gained access.[5]*

77.     Although Defendants state that they discovered the data breach around October 2, 2025, they have not yet sent notice of the breach to any impacted patients.

78.     Defendants have not disclosed the details of the cyberattack to Plaintiffs or Class members, including the root cause of the data breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again. To date, these critical facts have not been explained or clarified to Plaintiffs and Class members, who retain a vested interest in ensuring that their Private Information remains protected.

79.     Defendants delayed informing their own clients that their patients' Private Information was compromised in the data breach.

80.     Defendants still have not informed all involved entities that their patients' Private Information has been compromised.

---

[4] Steve Adler, *TriZetto Provider Solutions Notifies Healthcare Provider Clients About Data Breach*, THE HIPPA JOURNAL (Dec. 11, 2025), http://www.hipaajournal.com/trizetto-providersolutions-data-breach/.
[5] *See id.*

81.    Defendants' notices to Plaintiffs and Class members fail to include any substantive details about how the breach occurred.

82.    Defendants' failure to provide the substantive facts surrounding the data breach has left Plaintiffs and Class members without the ability to mitigate further harm resulting from the data breach.

83.    It is reasonable for Plaintiffs and Class Members to believe that future harm (including medical identity theft) is real and imminent, and to take steps necessary to mitigate that risk of future harm.

**C.    The Healthcare Sector Is Particularly Susceptible to Data Breaches**

84.    Defendants were on notice that health data is a particularly susceptible target for data breaches.

85.    Defendants were also on notice that the FBI has been concerned about data security in the healthcare industry. In August 2014, after a cyberattack on Community Health Systems, Inc., the FBI warned companies within the healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PII)."[6]

86.    The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only

---

[6] Jim Finkle, *FBI Warns Healthcare Firms that they are Targeted by Hackers*, Reuters (Aug. 2014), https://www.reuters.com/article/us-cybersecurity-healthcare-fbi/fbi-warns-healthcare-firms-they-are-targeted-by-hackers-idUSKBN0GK24U20140820 (last visited Oct. 22, 2025).

threaten the privacy and security of patients' health and financial information, but also patient access to care.[7]

87.    The healthcare sector reported the second largest number of data breaches among all measured sectors in 2018, with the highest rate of exposure per breach.[8] In 2022, the largest growth in compromises occurred in the healthcare sector.[9]

88.    In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 victims' sensitive records being exposed, a 68% increase from 2020. Of the 1,862 recorded data breaches, 330 of them, or 17.7% were in the healthcare industry.[10] The 330 reported breaches in 2021 exposed nearly 30 million sensitive records (28,045,658), an increase from the 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.

89.    In light of recent high profile cybersecurity incidents at other healthcare partner and provider companies, including American Medical Collection Agency (25 million patients, March 2019), University of Washington Medicine (974,000 patients, December 2018), Florida Orthopedic Institute (640,000 patients, July 2020), Wolverine Solutions Group (600,000 patients, September 2018), Oregon Department of Human Services (645,000 patients, March 2019), Elite Emergency Physicians (550,000 patients, June 2020), Magellan Health (365,000 patients, April

---

[7] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, Am. Med. Ass'n. (Oct.4, 2019),https://www.ama-assn.org/practice-management/sustainability/cybersecurity -ransomware-attacks-shut-down-clinics-hospitals.

[8]    Identity Theft Resource Center, *2018 End-of-Year Data Breach Report,* https://www.idtheftcenter.org/wp-content/uploads/2019/02/ITRC_2018-End-of-Year-Aftermath_FINAL_V2_combinedWEB.pdf (last visited Oct. 22, 2025).

[9]    Identity Theft Resource Center, *2022 End-of-Year Data Breach Report,* https://www.idtheftcenter.org/wp-content/uploads/2023/01/ITRC_2022-Data-Breach-Report_Final-1.pdf (last visited Oct. 22, 2025).

[10] *See* Identity Theft Resource Center, *2021 in review: Data Breach Annual Report* (Jan. 2022), https://www.wsav.com/wp-content/uploads/sites/75/2022/01/20220124_ITRC-2021-Data-Breach-Report.pdf .

2020), and BJC Health System (286,876 patients, March 2020), Defendants knew or should have known that their electronic records would be targeted by cybercriminals.

90.    Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found that the "average total cost to resolve an identity theft-related incident … came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[11]

91.    Almost 50 percent of the victims lost their healthcare coverage as a result of an identity-theft incident, while nearly 30 percent said their insurance premiums went up after the incident. Forty percent of the customers were never able to resolve their identity theft at all.[12] Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy as a whole.

92.    Healthcare related breaches have continued to rapidly increase because electronic patient data is seen as a valuable asset. "Hospitals have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From Social Security numbers and insurance policies, to next of kin and credit cards, no other organization, including credit bureaus, have so much monetizable information stored in their data centers."[13]

---

[11] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010), https://www.cnet.com/news/privacy/study-medical-identity-theft-is-costly-for-victims/.

[12] *Id*.

[13] Eyal Benishti, *How to Safeguard Hospital Data from Email Spoofing Attacks* (Apr. 4, 2019), https://www.chiefhealthcareexecutive.com/view/how-to-safeguard-hospital-data-from-email-spoofing-attacks.

93.     A ransomware attack is a type of cyberattack that is frequently used to target healthcare providers due to the sensitive patient data they maintain. In a ransomware attack the attackers use software to encrypt data on a compromised network, rendering it unusable and demanding payment to restore control over the network. Ransomware attacks are particularly harmful for patients and healthcare providers alike as they cause operational disruptions that result in lengthier patient stays, delayed procedures or test results, increased complications from surgery, and even increased mortality rates. In 2021, 44% of healthcare providers who experienced a ransomware attack saw their operations disrupted for up to a week and 25% experienced disrupted services for up to a month.[14]

94.     An increasingly prevalent form of ransomware attack is the "encryption+exfiltration" attack in which the attacker encrypts a network and exfiltrates the data contained within.[15] In 2020, "[a]lmost 50% of ransomware cases included the threat to release exfiltrated data along with encrypted data."[16] Once the data is exfiltrated from a network, its confidential nature is destroyed and it should be "assume[d] it will be traded to other threat actors, sold, or held for a second/future extortion attempt."[17] And even where companies pay for the return of data attackers often leak or sell the data regardless because there is no way to verify copies of

---

[14]    Sophos, *The State of Ransomware in Healthcare 2022* (May 2022), https://assets.sophos.com/X24WTUEQ/at/4wxp262kpf84t3bxf32wrctm/sophos-state-of-ransomware-healthcare-2022-wp.pdf.

[15] Emisoft Malware Lab, *The chance of data being stolen in a ransomware attack is greater than one in ten* (July 13, 2020), https://blog.emsisoft.com/en/36569/the-chance-of-data-being-stolen-in-a-ransomware-attack-is-greater-than-one-in-ten/ (last visited Oct. 22, 2025).

[16] *2020 Quarterly Report: Ransomware Demands continue to rise as Data Exfiltration becomes common and Maze subdues* (November 4, 2020), https://www.coveware.com/blog/q3-2020-ransomware-marketplace-report.

[17] *Id.*

the data are destroyed.[18]

95.     Accordingly, Plaintiffs and Class members believe that their Private Information has been or will be sold on the dark web or privately on other underground markets, as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

96.     As healthcare services providers, Defendants knew, or should have known, the importance of safeguarding Private Information entrusted to them and of the foreseeable consequences if such data were to be disclosed. These consequences include the significant costs that would be imposed on patients as a result of a breach. Defendants failed, however, to take adequate cybersecurity measures to prevent the data breach from occurring.

**D.      Defendants Failed to Comply with HIPAA**

97.     Title II of HIPAA contains what is known as the Administration Simplification provisions. *See* 42 U.S.C. §§ 1301 *et seq*. These provisions require that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PHI similar to the data Defendants left unguarded and vulnerable to attack. The HHS has subsequently promulgated five rules under authority of the Administrative Simplification provisions of HIPAA.[19]

98.     Plaintiffs allege, upon information and belief, that Defendants functioned as a "business associate"[20] under HIPAA and that Defendants were therefore subject to HIPAA's

---

[18] *Id.*

[19] Tshedimoso Makhene, *What Is Title II of HIPAA?* (Dec. 23, 2024), https://hipaatimes.com/what-is-title-ii-of-hipaa#:~:text=Title%20II%20of%20HIPAA%20is,and%20security%20of%20that%20information.

[20] 45 C.F.R. § 160.103 ("*Business associate* includes: (i) A Health Information Organization, E-prescribing Gateway, or other person that provides data transmission services with respect

security rule and breach notification requirements. While HIPAA itself does not provide a private right of action, its standards and security requirements inform the duty of care and industry practices Defendants were and are obligated to follow.

99.     Defendants' data breach resulted from a combination of insufficiencies that show Defendants failed to comply with safeguards mandated by HIPAA regulations and industry standards. First, it can be inferred from the data breach that Defendants failed to implement, or inadequately implemented, information security policies or procedures to protect Plaintiffs and Class members' Private Information.

100.    Plaintiffs' and Class members' Private Information compromised in the data breach included "protected health information" or individually identifiable health information.[21]

101.    It is reasonable to infer that Plaintiffs' and Class members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the data breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

102.    Defendants could have prevented the data breach by implementing HIPAA-mandated, industry-standard policies and procedures for securely disposing of PHI when it was no longer necessary and/or had honored its obligations to its patients.

103.    Defendants' security failures also include, but are not limited to:

a.    Failing to maintain adequate data security systems to prevent data loss;

b.    Failing to mitigate the risks of a data breach and loss of data;

---

to protected health information to a covered entity and that requires access on a routine basis to such protected health information.")

[21] 45 C.F.R. § 160.103 ("*Protected health information* means individually identifiable health information . . . .").

20

c.  Failing to ensure the confidentiality and integrity of electronic protected health information Defendants create, receive, maintain, and transmit in violation of 45 CFR § 164.306(a)(1);

d.  Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR § 164.312(a)(1);

e.  Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR § 164.308(a)(1);

f.  Failing to identify and respond to suspected or known security incidents;

g.  Failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR § 164.308(a)(6)(ii);

h.  Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR § 164.306(a)(2);

i.  Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR § 164.306(a)(3);

j.  Failing to ensure compliance with HIPAA security standard rules by Defendants' workforce, in violation of 45 CFR § 164.306(a)(4); and

k.  Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR §

21

164.502, *et seq.*

104.    While monetary relief may cure some of Plaintiffs' and Class members' injuries, injunctive relief is also necessary to ensure Defendants' approach to information security is adequate and appropriate going forward. Defendants still maintain the Private Information of their current and former patients, including Plaintiffs and Class members. Without the supervision of the Court through injunctive relief, Plaintiffs' and Class members' Private Information remains at risk of subsequent data breaches.

**E.    Defendants Failed to Comply with FTC Guidelines**

105.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

106.    In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

107.     The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

108.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

109.     As evidenced by the Data Breach, Defendants failed to properly implement basic data security practices. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

110.     Defendants were at all times fully aware of their obligation to protect the Private Information of their customers' patients yet failed to comply with such obligations. Defendants were also aware of the significant repercussions that would result from their failure to do so.

F.     **Defendants Failed to Comply with Industry Standards**

111.     As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

112.     Some industry best practices that should be implemented by businesses dealing with Private Information like Defendants include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware

23

software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendants failed to follow some or all of these industry best practices.

113.    Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the data breach, Defendants failed to follow these cybersecurity best practices.

114.    Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

115.    Defendants failed to comply with these accepted standards, thereby permitting the data breach to occur.

## G.    Defendants Breached Their Duty to Safeguard Private Information

116.    In addition to their obligations under federal and state laws, Defendants owed a duty to Plaintiffs and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed a duty to Plaintiffs and Class members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems, networks, and

protocols adequately protected Private Information.

117.    Defendants breached their obligations to Plaintiffs and Class members and/or were otherwise negligent and reckless because they failed to properly maintain and safeguard their computer systems, servers, and data. Defendants' unlawful conduct includes, but is not limited to, the following acts and/or omissions:

        a.   Failing to maintain adequate data security systems that would reduce the risk of data breaches and cyberattacks;

        b.   Failing to adequately protect their patients' Private Information;

        c.   Failing to properly monitor their data security systems for existing intrusions;

        d.   Failing to sufficiently train their employees regarding the proper handling of their clients' Private Information;

        e.   Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

        f.   Failing to adhere to HIPAA and industry standards for cybersecurity as discussed above; and

        g.   Otherwise breaching their duties and obligations to protect Plaintiffs' and Class members' Private Information.

118.    Defendants negligently and unlawfully failed to safeguard Plaintiffs' and Class members' Private Information by allowing cyberthieves to access their computer networks and systems which contained unsecured and unencrypted Private Information.

119.    Had Defendants remedied the deficiencies in their information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in

the field, they could have prevented intrusion into their information storage and security systems and, ultimately, the theft of Plaintiffs' and Class members' confidential Private Information.

120.    Accordingly, Plaintiffs' and Class members' lives were severely disrupted. They have been harmed as a result of the data breach, and they now face an increased risk of future harm that includes, but is not limited to, fraud and identity theft. Plaintiffs and Class members also lost the benefit of the bargain they made with Defendants.

## H.    Defendants Should Have Known That Cybercriminals Target Private Information to Carry Out Fraud and Identity Theft

121.    The FTC hosted a workshop to discuss "informational injuries," which are injuries that consumers, like Plaintiffs and Class members, suffer from privacy and security incidents such as data breaches or unauthorized disclosure of data.[22] Exposure of highly sensitive personal information that a consumer wishes to keep private may cause harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

122.    Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

---

[22] *FTC Information Injury Workshop, BE and BCP Staff Perspective* (Oct. 2018), https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf.

123.    Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

124.    In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a collage of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect." Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts.

125.    Thus, even if certain information was not purportedly involved in the data breach, the unauthorized parties could use Plaintiffs' and Class members' Private Information to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiffs and Class members.

126.    For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a

freeze on their credit, and correcting their credit reports.[23] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

127.    Identity thieves can also use stolen personal information such as Social Security numbers and PHI for a variety of crimes, including medical identity theft, credit card fraud, phone or utilities fraud, bank fraud, to obtain a driver's license or official identification card in the victim's name but with the thief's picture, to obtain government benefits, or to file a fraudulent tax return using the victim's information.

128.    PHI is also especially valuable to identity thieves. As the FTC recognizes, identity thieves can use PHI to commit an array of crimes, including identity theft and medical and financial fraud.[24]

129.    A robust cyber black market exists in which criminals openly post stolen PHI on multiple underground Internet websites, commonly referred to as the dark web.

130.    While credit card information and associated PII can sell for as little as $1-$2 on the black market, protected health information can sell for as much as $363 according to the Infosec Institute.[25]

131.    PHI is particularly valuable because criminals can use it to target victims with frauds and scams that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

---

[23] *See* FTC, *IdentityTheft.gov,* https://www.identitytheft.gov/Steps (last visited July 3, 2025).

[24] FTC, *Warning Signs of Identity Theft,* https://consumer.ftc.gov/articles/what-know-about-identity-theft (last visited July 3, 2025).

[25] Center for Internet Security, *Data Breaches: In the Healthcare Sector,* https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector (last visited July 3, 2025).

132.    Medical identity theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's health information is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[26]

133.    The ramifications of Defendants' failure to keep its customers' patients' Private Information secure are long-lasting and severe. Once it is stolen, fraudulent use of such and damage to victims may continue for years.

134.    The value of Private Information is axiomatic. The value of "big data" in corporate America is astronomical. The fact that identity thieves attempt to steal identities notwithstanding possible heavy prison sentences illustrates beyond a doubt that the Private Information compromised here has considerable market value.

135.    This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[27]

136.    For example, Social Security numbers are among the worst kind of Private

---

[26] Michael Ollove, "*The Rise of Medical Identity Theft in Healthcare*," Kaiser Health News (Feb. 7, 2014), https://kffhealthnews.org/news/rise-of-indentity-theft/ (last visited July 3, 2025).

[27] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited July 3, 2025).

Information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as may be experienced by Plaintiffs and some Class members, can lead to identity theft and extensive financial fraud:

137.    A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[28]

138.    An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

139.    Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[29]

---

[28] Social Security Administration, *Identity Theft and Your Social Security Number*, https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited July 3, 2025).

[29] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last visited July 3, 2025).

140.    It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when Private Information is stolen and when it is misused. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[30]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

141.    PII and PHI are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the dark web for years.

142.    As a result, Plaintiffs and Class members are at an increased risk of fraud and identity theft, including medical identity theft, for many years into the future. Thus, Plaintiffs and Class members have no choice but to vigilantly monitor their accounts for many years to come.

## I.    Plaintiffs and Class Members Have Suffered Common Injuries and Damages

143.    As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and Class members have been harmed and are at an imminent, immediate, and continuing increased risk of harm, including but not limited to, having medical services billed in their names, loans and credit card accounts opened in their names, tax returns filed in their names, utility bills opened in their names, and other forms of identity theft and fraud.

144.    The Private Information maintained by and stolen from Defendants' systems,

---

[30] GAO,*Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), https://www.gao.gov/assets/270/262904.html (last visited July 3, 2025).

combined with publicly available information, allows nefarious actors to assemble a detailed informational representation of Plaintiffs and Class members, which can be further used to carry out targeted fraudulent schemes against Plaintiffs and Class members.

145.    Plaintiffs and Class members face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since fraudsters will likely use such Private Information to carry out such targeted schemes against Plaintiffs and Class members.

146.    The harm faced by Plaintiffs and Class members is substantial and imminent, as unauthorized cybercriminals now have possession of their information, available for their use however and whenever they see fit, including posting or selling that information on the dark web. Defendants acknowledge that the risk borne by Plaintiffs' and Class members is a real one, as evidenced by the notices sent by Defendants to Plaintiffs, which "offer" victims of the data breach a short-term credit monitoring product to help protect their identities.

147.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Class members have and will be forced in the future to take the time and effort to mitigate the actual and potential impact of the data breach on their everyday lives, including placing "freezes," "locks," and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, filing police reports or regulator complaints, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

148.    Plaintiffs and Class members may also incur present and ongoing out-of-pocket costs for protective measures such as fees for identity protection and credit monitoring services, credit report fees, credit lock fees, and similar costs related to the data breach.

149.    As a direct and proximate result of the data breach and the attendant ongoing risk of identity theft and fraud, Plaintiffs and Class members are entitled to damages in the amount of the present value of ongoing, long-term identity protection and credit monitoring services, to attempt to return Plaintiffs and Class members to the status quo in existence before Defendants' data breach foisted that ongoing risk of fraud and identity theft upon them.

150.    Plaintiffs and Class members have suffered or will suffer actual injury as a direct and proximate result of the data breach in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the data breach. These losses include, but are not limited to, the following:

a.  Monitoring for and discovering fraudulent charges;

b.  Canceling and reissuing credit and debit cards;

c.  Addressing their inability to withdraw funds linked to compromised accounts;

d.  Taking trips to banks and waiting in line to obtain funds held in limited accounts;

e.  Spending time on the phone with or at a financial institution to dispute fraudulent charges;

f.  Contacting financial institutions and closing or modifying financial accounts;

g.  Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

h.  Paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised cards that had to be cancelled; and

i.  Closely reviewing and monitoring bank accounts and credit reports for

33

additional unauthorized activity for years to come.

151.    Plaintiffs and Class members also lost the benefit of the bargain they made with Defendants. Plaintiffs and Class members overpaid for services that were intended to be accompanied by adequate data security but were not. Part of the price paid by Plaintiffs and Class members (or, in some cases, on their behalf) to Defendants was intended to be and should have been used by Defendants to fund adequate security of Defendants' computer systems and thereby protect Plaintiffs' and Class members' Private Information. Thus, Plaintiffs and the Class did not receive the benefit of the bargain.

152.    Additionally, Plaintiffs and Class members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the data breach. Numerous courts have recognized the propriety of loss of value damages in similar cases. An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[31] In fact, the data marketplace is so sophisticated that consumers can sell their non-public information directly to a data broker who in turn aggregates the information and provides it to other companies.[32] Consumers who agree to provide their web browsing history to the Nielsen Corporation can in turn receive up to $50 a year.[33]

153.    As a result of the data breach, Plaintiffs' and Class members' Private Information, which has an inherent market value in both legitimate and illegal markets, has been harmed and diminished due to its acquisition by cybercriminals. This transfer of valuable information happened with no consideration paid to Plaintiffs or Class members for their property, resulting in

---

[31] *See* Data Coup, *The personal data revolution*, https://datacoup.com/ (last visited July 3, 2025).
[32] *What is digi.me?*, https://digi.me/what-is-digime/ (last visited July 3, 2025).
[33] Nielsen Computer & Mobile Panel, *Frequently Asked Questions*, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last visited July 3, 2025).

an economic loss. Moreover, because the Private Information is now in the hands of cybercriminals, the rarity of that information has been destroyed because it is no longer only held by Plaintiffs and the Class members, and because that data no longer necessarily correlates only with activities undertaken by Plaintiffs and Class members, thereby causing additional loss of value.

154.    Further, Defendants, through their acts and omissions alleged herein, allowed unauthorized access to and use of Plaintiffs' and Class members' Private Information. Plaintiffs' and Class members were thereby damaged in an amount equaling the value of access to their Private Information, akin to a royalty or license fee.

155.    Plaintiffs and Class Members are, at the very least, entitled to nominal damages for Defendants' violations as discussed herein. As a result of Defendants' failure to safeguard Plaintiffs' and Class members' Private Information, Plaintiffs and Class members are forced to live with the knowledge that their Private Information—which contains private and personal details of their life and medical care—is in the hands of cybercriminals and has been or may be disclosed or made available for sale to the entire world online, thereby making them vulnerable to fraud and identity theft, permanently subjecting them to loss of security, and depriving Plaintiffs and Class members of their fundamental right to privacy.

156.    Plaintiffs and Class Members are entitled to statutory damages, as provided, based upon the relevant causes of action alleged herein, and described below. Defendants were unjustly enriched at the expense of, and to the detriment of, Plaintiffs and Class members. Among other things, Defendants continue to benefit and profit from their Private Information, while its value to Plaintiffs and Class members has been diminished.

157.    Moreover, Plaintiffs and Class members have an interest in ensuring that their Private Information, which is believed to still be in the possession of Defendants, is protected from future breaches by the implementation of more adequate data security measures and safeguards, including but not limited to, ensuring that the storage of data or documents containing Private Information is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

158.    As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and Class members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

## CLASS ACTION ALLEGATIONS

159.    Plaintiffs bring this action individually and on behalf of all other persons similarly situated, pursuant to Rule 23 of the Federal Rule of Civil Procedure.

160.    The Classes that Plaintiffs seek to represent are defined as follows:

**Nationwide Class:**

All individuals residing in the United States whose Private Information was compromised in the TriZetto data breach, including all those individuals who received notice of the breach.

**State Subclasses:**

All individuals residing in the State identified in the applicable Count whose Private Information was compromised in the TriZetto data breach, including all those individuals who received notice of the breach.

161.    Collectively, the Class and Subclasses are referred to as the "Classes" or "Class members."

162.    Excluded from the Classes are Defendants and their parents or subsidiaries, any entities in which they have a controlling interest, as well as their officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom

36

this case is assigned as well as their judicial staff and immediate family members.

163.    Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

164.    The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

165.    <u>Numerosity.</u> The Class members are so numerous that joinder of all members is impracticable. The disposition of the individual claims of the respective Class members through this class action will benefit both the parties and this Court. The exact size of the Class and the identities of Class members are ascertainable through TriZetto's and its customers' records, including but not limited to, the files implicated in the data breach.

166.    <u>Commonality.</u> There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

    a.  Whether Defendants engaged in the conduct alleged herein;

    b.  When Defendants learned of the data breach;

    c.  Whether Defendants' response to the data breach was adequate;

    d.  Whether Defendants unlawfully lost or disclosed Plaintiffs' and Class members' Private Information;

    e.  Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the data breach;

    f.  Whether Defendants' data security systems prior to and during the data breach complied with applicable data security laws and regulations;

g.  Whether Defendants' data security systems prior to and during the data breach were consistent with industry standards;

h.  Whether Defendants owed a duty to Plaintiffs and Class members to safeguard their Private Information;

i.  Whether Defendants breached their duty to Plaintiffs and Class members to safeguard their Private Information;

j.  Whether hackers obtained Plaintiffs' and Class members' Private Information via the data breach;

k.  Whether Defendants had a legal duty to provide timely and accurate notice of the data breach to Plaintiffs and the Class members;

l.  Whether Defendants breached their duty to provide timely and accurate notice of the data breach to Plaintiffs and Class members;

m.  Whether Defendants knew or should have known that their data security systems and monitoring processes were deficient;

n.  What damages Plaintiffs and Class members suffered as a result of Defendants' misconduct;

o.  Whether Defendants' conduct was negligent;

p.  Whether Defendants' conduct was *per se* negligent;

q.  Whether either Defendant was unjustly enriched;

r.  Whether Plaintiffs and Class members are entitled to actual and/or statutory damages;

s.  Whether Plaintiffs and Class members are entitled to additional credit or identity monitoring and monetary relief; and

t.  Whether Plaintiffs and Class members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

167.  <u>Typicality.</u> Plaintiffs' claims are typical of those of other Class members because Plaintiffs' Private Information, like that of every other Class Member, was compromised in the data breach. Plaintiffs' claims are typical of those of the other Class members because, *inter alia*, all Class members were injured through the common misconduct of Defendants. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class members, and there are no defenses that are unique to the named Plaintiffs. The claims of the named Plaintiffs and those of Class members arise from the same operative facts and are based on the same legal theories.

168.  <u>Adequacy of Representation</u>. Plaintiffs will fairly and adequately represent and protect the interests of Class members. Plaintiffs' counsel are competent and experienced in litigating class actions, including data privacy litigation of this kind.

169.  <u>Predominance</u>. Defendants have engaged in a common course of conduct toward Plaintiffs and Class members, in that Plaintiffs' and Class members' Private Information was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendants' conduct affecting Class members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

170.  <u>Superiority.</u> A class action is superior to other available methods for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is

superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

171.    Finally, all members of the proposed Class are readily ascertainable. Defendants have access to the names and addresses and/or email addresses of Class members affected by the data breach.

**CLAIMS FOR RELIEF**

**Count I–Negligence**
**(On behalf of the Nationwide Class)**

172.    Plaintiffs restate the allegations in Paragraphs 1 through 171 above, as if fully set forth herein.

173.    Defendants knowingly collected, came into possession of, and maintained Plaintiff's and Class members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Private Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

174.    Defendants knew or should have known of the risks inherent in collecting Plaintiffs' and Class members' Private Information and the importance of adequate security. Defendants were on notice because they knew or should have known that they are attractive targets for cyberattacks seeking healthcare-related data and other Private Information.

175. Defendants owed a non-delegable duty of care to Plaintiffs and Class members whose Private Information was entrusted to them. Defendants' duties included, but were not limited to, the following:

   a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in their possession;

   b. To protect their patients' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

   c. To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in their possession;

   d. To employ reasonable security measures and to otherwise protect the Private Information of Plaintiffs and Class members pursuant to federal and state regulations including but not limited to HIPAA and the FTCA;

   e. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

   f. To promptly notify Plaintiffs and Class members of the data breach, and to precisely disclose the type(s) of information compromised.

176. Defendants' duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair… practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

177. Defendants' duty also arose because, as health service providers, Defendants were bound by industry standards to protect their patients' confidential Private Information.

178. Defendants hold themselves out as trusted data collectors, respectively, and thereby

assume a duty to reasonably protect their patients' information. Indeed, Defendants, as direct data collectors, were in a unique and superior position to protect against the harm suffered by Plaintiffs and Class members as a result of the data breach.

179.    Plaintiffs and Class members were foreseeable victims of any inadequate security practices on the part of Defendants, and Defendants owed them a duty of care to not subject them to an unreasonable risk of harm.

180.    Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiffs and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class members' Private Information within Defendants' possession.

181.    Defendants, by their actions and/or omissions, breached their duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Plaintiffs' and Class members' Private Information.

182.    Defendants, by their actions and/or omissions, breached their duty of care by failing to promptly identify the data breach and then failing to provide prompt notice of the data breach to the persons whose Private Information was compromised.

183.    Defendants breached their duties, and thus were negligent, by failing to use reasonable measures to protect Class members' Private Information. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

   a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Class members' Private Information;

   b.  Failing to adequately monitor the security of their networks and systems;

   c.  Failing to periodically ensure that its email system maintained reasonable data security safeguards;

d.  Allowing unauthorized access to Class members' Private Information;

e.  Failing to comply with the FTCA; and

f.  Failing to detect in a timely manner that Class members' Private Information had been compromised.

184.  Defendants had a special relationship with Plaintiffs and Class members. Plaintiffs' and Class members' willingness to entrust Defendants with their Private Information was predicated on the understanding that Defendants would take adequate security precautions.

185.  Defendants' breach of duties owed to Plaintiffs and Class members caused Plaintiffs' and Class members' Private Information to be compromised, exfiltrated, and/or misused, as alleged herein.

186.  As a result of Defendants' ongoing failure to notify Plaintiffs and Class members regarding exactly what Private Information has been compromised, Plaintiffs and Class members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

187.  Defendants' breaches of duty also caused a substantial, imminent risk to Plaintiffs and Class members of identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

188.  As a result of Defendants' negligence in breach of their duties owed to Plaintiffs and Class members, Plaintiffs and Class members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

189.  As a direct and proximate result of Defendants' negligent conduct, Plaintiffs and Class members have suffered damages as alleged herein and are at imminent risk of further harm.

190.    The injury and harm that Plaintiffs and Class members suffered was reasonably foreseeable.

191.    Plaintiffs and Class members have suffered injury and are entitled to damages in an amount to be proven at trial.

192.    In addition to monetary relief, Plaintiffs and Class members are also entitled to injunctive relief requiring Defendants to, *inter alia*, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class members.

## Count II–Negligence *per se*
### (On behalf of the Nationwide Class)

193.    Plaintiffs restate the allegations in Paragraphs 1 through 171 above, as if fully set forth herein.

194.    Under the FTC Act, 15 U.S.C. § 45, Defendants had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class members' Private Information.

195.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the Private Information entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiffs' and the Class members' sensitive Private Information.

196.    Defendants breached their respective duties to Plaintiffs and Class members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Private Information.

197.    Defendants violated their duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of Private Information Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

198.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. The FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and Class members.

199.    Defendants' duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendants and its patients, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendants were in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiffs and Class members from a data breach.

200.    Defendants' duty to use reasonable security measures under HIPAA required Defendants to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 1 64.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

201.    Defendants violated their duty under HIPAA by failing to use reasonable measures to protect their PHI and by not complying with applicable regulations detailed *supra*. Here too,

45

Defendants' conduct was particularly unreasonable given the nature and amount of Private Information Defendants collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

202.    But for Defendants' wrongful and negligent breach of their duties owed, Plaintiffs and Class members would not have been injured.

203.    The injury and harm suffered by Plaintiffs and Class members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they were failing to meet their duties and that the breach would cause Plaintiffs and Class members to suffer the foreseeable harms associated with the exposure of their Private Information. Defendants' failure to comply with applicable laws and regulations constitutes negligence *per se*.

204.    As a direct and proximate result of Defendants' negligence *per se*, Plaintiffs and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

<u>**Count III– Breach of Third-Party Beneficiary Contract**</u>
**(On behalf of the Nationwide Class)**

205.    Plaintiffs restate the allegations in Paragraphs 1 through 171 above, as if fully set forth herein.

206.    Upon information and belief, TriZetto entered into valid contracts with its clients, including the Healthcare Provider Defendants, to provide software products and/or services, including business associate agreements under HIPAA, which included data security practices, procedures, and protocols sufficient to safeguard the Private Information that was to be entrusted to TriZetto.

207.    Such contracts were made expressly for the benefit of Plaintiffs and the Class, as it was their Private Information that Defendants agreed to receive and protect through their services.

208.    The benefit of collection and protection of the Private Information belonging to Plaintiffs and the Class was the direct and primary objective of the contracting parties, and Plaintiffs and the Class members were direct and express beneficiaries of such contracts.

209.    Plaintiffs and the Class are also intended third-party beneficiaries of these contracts because recognizing them as such is appropriate to effectuate the intentions of the parties, and the circumstances indicate that Defendants intended to give the beneficiaries the benefit of the promised performance.

210.    Defendants knew that if they were to breach these contracts, healthcare patients, including Plaintiffs and the Class, would be harmed by, among other harms, fraudulent transactions and the need to expend time and money to protect themselves from identity theft.

211.    Defendants breached their contracts when they failed to use reasonable data security measures and/or business associate monitoring measures and allowed the data breach to occur.

212.    As foreseen, Plaintiffs and the Class were harmed by Defendants' failure to use reasonable data security measures to securely store and protect the files in their care, including but not limited to, the continuous and substantial risk of harm through the loss of their Private Information. Accordingly, Plaintiffs and the Class are entitled to damages in an amount to be determined at trial, along with costs and attorneys' fees incurred in this action.

### Count IV–Breach of Implied Contract
### (On behalf of the Nationwide Class)

213.    Plaintiffs restate the allegations in Paragraphs 1 through 171 above, as if fully set forth herein.

214.    Defendants provide healthcare-related services to Plaintiffs and Class members. Plaintiffs and Class members formed an implied contract with Defendants regarding the provision

of those services through their collective conduct, including by Plaintiffs and Class members paying for services from Defendants (or having their insurance companies pay Defendants on their behalf).

215.    Through Defendants' sale of medical services, they knew or should have known that they must protect Plaintiffs' and Class members' confidential Private Information in accordance with Defendants' policies, practices, and applicable law.

216.    As consideration, Plaintiffs and Class members paid money (or money was paid on their behalf) to Defendants and turned over valuable Private Information to Defendants. Accordingly, Plaintiffs and Class members bargained with Defendants to securely maintain and store their Private Information.

217.    Defendants solicited, offered, and invited Plaintiffs and Class members to provide their Private Information as part of Defendants' regular business practices. Plaintiffs and Class members accepted Defendants' offers and provided their Private Information to doctors or other healthcare professionals who then provided it to TriZetto.

218.    Defendants accepted possession of Plaintiffs' and Class members' Private Information for the purpose of providing healthcare-related services to Plaintiffs and Class members.

219.    In delivering their Private Information to Defendants and paying for healthcare services, Plaintiffs and Class members intended and understood that Defendants would adequately safeguard Private Information as part of that service.

220.    Defendants' implied promises to Plaintiffs and Class members include, but are not limited to, (1) taking steps to ensure that anyone who is granted access to Private Information also protect the confidentiality of that data; (2) taking steps to ensure that the Private Information that

is placed in the control of their employees is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained employees and/or agents; (4) designing and implementing appropriate retention policies to protect the Private Information against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; (7) complying with HIPAA standards to make sure that Plaintiffs' and Class members' PHI would remain protected; and (8) taking other steps to protect against foreseeable data breaches.

221. Plaintiffs and Class members would not have entrusted their Private Information to Defendants in the absence of such an implied contract.

222. Had Defendants disclosed to Plaintiffs and the Class that they did not have adequate computer systems and security practices to secure sensitive data, Plaintiffs and the Class members would not have provided their Private Information to Defendants.

223. As providers of healthcare-related services, Defendants recognized (or should have recognized) that Plaintiffs' and Class members' Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain with Plaintiffs and the other Class members.

224. Defendants violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiffs' and Class members' Private Information. Defendants further breached these implied contracts by failing to comply with their promise to abide by HIPAA.

225. Additionally, Defendants breached the implied contracts with Plaintiffs and Class members by failing to ensure the confidentiality and integrity of electronic protected health information they created, received, maintained, and transmitted, in violation of 45 CFR §

49

164.306(a)(1).

226.    Defendants also breached the implied contracts with Plaintiffs and Class members by failing to implement technical policies and procedures for electronic systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 CFR § 164.312(a)(1).

227.    Defendants further breached the implied contracts with Plaintiffs and Class members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 CFR § 164.308(a)(1).

228.    Defendants further breached the implied contracts with Plaintiffs and Class members by failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR § 164.308(a)(6)(ii).

229.    Defendants further breached the implied contracts with Plaintiffs and the Class members by failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR § 164.306(a)(2).

230.    Defendants further breached the implied contracts with Plaintiffs and the Class members by failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR § 164.306(a)(3).

231.    Defendants further breached the implied contracts with Plaintiffs and the Class members by failing to ensure compliance with the HIPAA security standard rules by their workforce, in violation of 45 CFR § 164.306(a)(4).

232.    Defendants further breached the implied contracts with Plaintiffs and the Class

members by impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR § 164.502, *et seq.*

233.    Defendants further breached the implied contracts with Plaintiffs and the Class members by failing to design, implement, and enforce policies and procedures establishing physical administrative safeguards to reasonably safeguard protected health information, in violation of 45 CFR § 164.530(c).

234.    Defendants further breached the implied contracts with Plaintiffs and the Class members by otherwise failing to safeguard Plaintiffs' and Class members' Private Information.

235.    A meeting of the minds occurred, as Plaintiffs and the Class members agreed, *inter alia*, to provide accurate and complete Private Information and to pay Defendants in exchange for Defendants' agreement to, *inter alia*, protect their Private Information.

236.    Plaintiffs and the Class members have been damaged by Defendants' conduct, including the harms and injuries arising from the data breach now and in the future, as alleged herein.

## **Count V–Unjust Enrichment**
### **(On behalf of the Nationwide Class)**

237.    Plaintiffs restate the allegations in Paragraphs 1 through 171 above, as if fully set forth herein.

238.    Plaintiffs and the Class members conferred a benefit on Defendants by turning over their Private Information to Defendants and by paying for medical services (or having their insurance companies pay for medical services) that should have included cybersecurity protection to protect their Private Information. Plaintiffs and the Class members did not receive such protection.

239.    Upon information and belief, Defendants fund their data security measures entirely from its general revenue, including from payments made to it by Plaintiffs and the Class members (or on their behalf).

240.    As such, a portion of the payments made by Plaintiffs and the Class members is to be used to provide a reasonable and adequate level of data security that is in compliance with applicable state and federal regulations and industry standards, and the amount of the portion of each payment made that is allocated to data security is known to Defendants.

241.    Defendants have retained the benefits of their unlawful conduct, including the amounts of payment received from Plaintiffs and the Class members that should have been used for adequate cybersecurity practices that they failed to provide.

242.    Defendants knew that Plaintiffs and the Class members conferred a benefit upon them, which Defendants accepted. Defendants profited from these transactions and used the Private Information of Plaintiffs and the Class members for business purposes, while failing to use the payments it received for adequate data security measures that would have secured Plaintiffs' and the Class members' Private Information and prevented the data breach.

243.    If Plaintiffs and the Class members had known that Defendants had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendants.

244.    Due to Defendants' conduct alleged herein, it would be unjust and inequitable under the circumstances for Defendants to be permitted to retain the benefit of their wrongful conduct.

245.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Class members have suffered and are at a continual, substantial, imminent risk of injury, including but not limited to: (i) identity theft; (ii) the loss of the opportunity to control how their Private

Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the data breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect Private Information in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the data breach for the remainder of the lives of Plaintiffs and the Class members.

246.    Plaintiffs and the Class members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiffs and Class members may seek restitution or compensation.

247.    Plaintiffs and Class members may not have an adequate remedy at law against Defendants, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

### Count VI–Breach of Confidence
### (On behalf of the Nationwide Class)

248.    Plaintiffs restate the allegations in Paragraphs 1 through 171 above, as if fully set forth herein.

249.    Plaintiffs and the Class members have an interest, both equitable and legal, in the Private Information about them that was conveyed to, collected by, and maintained by Defendants and ultimately accessed and acquired in the data breach.

250.    As healthcare service providers, Defendants have a special relationship with their patients, including Plaintiffs and Class members. Because of that special relationship, Defendants were provided with and stored Plaintiffs' and Class members' Private Information and had a duty to maintain such Information in confidence.

251.    Patients like Plaintiffs and Class members have a privacy interest in personal medical and other matters, and Defendants had a duty not to disclose such matters concerning their patients.

252.    As a result of the parties' relationship, Defendants had possession and knowledge of highly sensitive and confidential Private Information belonging to Plaintiffs and the Class members, information that was not generally known.

253.    Plaintiffs and the Class members did not consent nor authorize Defendants to release or disclose their Private Information to an unknown criminal actor.

254.    Defendants breached their duty of confidence owed to Plaintiffs and the Class members by, among other things: (a) mismanaging their computer systems and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of patient information that resulted in the unauthorized access and compromise of Plaintiffs' and Class members' Private Information; (b) mishandling their data security by failing to assess the sufficiency of their safeguards in place to control these risks; (c) failing to design and implement adequate information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate

and adjust their information security program in light of the circumstances alleged herein; (f) failing to detect the Breach at the time it began or within a reasonable time thereafter; (g) failing to follow their own privacy policies and practices published to their patients; and (h) making an unauthorized and unjustified disclosure and release of Plaintiffs' and Class members' Private Information to a criminal third party.

255.    But for Defendants' wrongful breach of their duty of confidence owed to Plaintiffs and Class members, their Private Information would not have been compromised.

256.    As a direct and proximate result of Defendants' wrongful breach of their duty of confidence, Plaintiffs and the Class members have suffered and will continue to suffer the injuries alleged herein.

257.    It would be inequitable for Defendants to retain the benefit of controlling and maintaining Plaintiffs' and Class members' Private Information at the expense of Plaintiffs and the Class members.

258.    Plaintiffs and the Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial.

### Count VII–Breach of Fiduciary Duty
**(On behalf of the Nationwide Class)**

259.    Plaintiffs restate the allegations in Paragraphs 1 through 171 above, as if fully set forth herein.

260.    In providing their Private Information to Defendants, Plaintiffs and the Class members justifiably placed a special confidence in Defendants to act in good faith and with due regard for the interests of Plaintiffs and the Class members to safeguard and keep confidential that Private Information.

261.    As healthcare service providers, Defendants have a fiduciary relationship to their clients, like Plaintiffs and Class members.

262.    Because of that fiduciary relationship, Defendants were provided with and stored valuable and sensitive Private Information belonging to Plaintiffs and Class members, which they were required to maintain in confidence.

263.    Defendants accepted the special confidence that Plaintiffs and Class members placed in it.

264.    In light of the special relationship between Defendants, Plaintiffs, and Class members, whereby Defendants became guardians of Plaintiffs and Class members' Private Information, Defendants became fiduciaries by their undertaking and guardianship of the Private Information, to act primarily for the benefit of their customers, including Plaintiffs and Class members for the safeguarding of Plaintiffs' and Class members' Private Information.

265.    Defendants have a fiduciary duty to act for the benefit of Plaintiffs and the Class members upon matters within the scope of their customer relationships, in particular, to keep secure the Private Information of their customers, exercise utmost care in protecting the Private Information in their possession from being compromised, lost, stolen, accessed by, misused by, or disclosed to unauthorized persons, and to timely notify Plaintiffs and the Class members of a data breach and disclosure.

266.    Plaintiffs and Class members have a privacy interest in their Private Information.

267.    Defendants breached their fiduciary duties to Plaintiffs and Class members by failing to protect the integrity of the systems containing Plaintiffs' and Class members' Private Information.

268.    Defendants breached their fiduciary duties to Plaintiffs and Class members by otherwise failing to safeguard Plaintiffs and Class members' Private Information and by failing to timely notify and/or warn Plaintiffs and Class members of the data breach.

269.    As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiffs and the Class members have suffered and will suffer injury, including but not limited to:

a.  The compromise, publication, and/or theft of their Private Information;

b.  Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information;

c.  Lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the data breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft;

d.  The continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information in their continued possession;

e.  Future costs in terms of time, effort, and money that will be expended as a result of the data breach for the remainder of the lives of Plaintiffs and the Class members; and

f.  The diminished value of the services they paid for and received.

270.    As a direct and proximate result of Defendants' breaches of its fiduciary duties, Plaintiffs and the Class members will suffer other forms of injury and/or harm, and other economic and non-economic losses.

**Count VIII–Invasion of Privacy**
**(On behalf of the Nationwide Class)**

271.    Plaintiffs restate the allegations in Paragraphs 1 through 171 above, as if fully set forth herein.

272.    Plaintiffs and the Class members had a reasonable expectation of privacy in the Private Information Defendants mishandled.

273.    As a result of Defendants' conduct, publicity was given to Plaintiffs' and Class members' Private Information, which necessarily includes matters concerning their private life such as their PII and PHI.

274.    A reasonable person of ordinary sensibilities would consider the publication of Plaintiffs' and the Class members' Private Information to be highly offensive.

275.    Plaintiffs' and the Class members' Private Information is not of legitimate public concern and should remain private.

276.    As a direct and proximate result of Defendants' public disclosure of private facts, Plaintiffs and the Class members are at a current and ongoing risk of identity theft and sustained compensatory damages including: (a) invasion of privacy; (b) financial "out of pocket" costs incurred mitigating the materialized risk and imminent threat of identity theft; (c) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (d) financial "out of pocket" costs incurred due to actual identity theft; (e) loss of time incurred due to actual identity theft; (f) loss of time due to increased spam and targeted marketing emails; (g) diminution of value of their Private Information; (h) future costs of identity theft monitoring; (i) anxiety, annoyance and nuisance, and (j) the continued risk to their Private Information, which remains in Defendants' possession, and which is subject to further breaches, so long as Defendants fails to undertake appropriate and adequate measures to protect Plaintiffs'

and the Class members' Private Information.

277.    Plaintiffs and the Class members are entitled to compensatory, consequential and nominal damages suffered as a result of the data breach.

278.    Plaintiffs and the Class members are also entitled to injunctive relief requiring Defendants to, *inter alia*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class members.

<u>**Count IX–Declaratory Judgment**</u>
**(On behalf of the Nationwide Class)**

279.    Plaintiffs restate the allegations in Paragraphs 1 through 171 above, as if fully set forth herein.

280.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

281.    In the fallout of the data breach, an actual controversy has arisen about Defendants' various duties to use reasonable data security. On information and belief, Plaintiffs and the Class allege that Defendants' actions were—and *still* are—inadequate and unreasonable. And, Plaintiffs and the Class members continue to suffer injury from the ongoing threat of fraud and identity theft.

282.    Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.    Defendants owed—and continue to owe—a legal duty to use reasonable data security to secure the data entrusted to them;

    b.    Defendants have a duty to notify impacted individuals of the data breach under

59

the common law and Section 5 of the FTC Act;

c.  Defendants breached, and continue to breach, their duties by failing to use reasonable measures to protect the data entrusted to them; and

d.  Defendants' breaches of their duties caused—and continue to cause—injuries to Plaintiffs and Class members.

283.  The Court should also issue corresponding injunctive relief requiring Defendants to use adequate security consistent with industry standards to protect the data entrusted to them.

284.   If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendants experience a second data breach.

285.  And if a second breach occurs, Plaintiffs and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages— while warranted for out-of-pocket damages and other legally quantifiable and provable damages— cannot cover the full extent of Plaintiffs' and Class members' injuries.

286.  If an injunction is not issued, the resulting hardship to Plaintiffs and the Class members far exceeds the minimal hardship that Defendants could experience if an injunction is issued. An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiffs, Class members, and the public at large.

### Count X–Violation of the Arizona Consumer Fraud Act, A.R.S. §§ 44-1521, *et seq.* (On behalf of the Arizona Subclass)

287.  The Arizona Plaintiffs identified above, individually and on behalf of the Arizona Subclass, restate the allegations in Paragraphs 1 through 171 above, as if fully set forth herein.

288.  Defendants are each a "person" as defined by A.R.S. § 44-1521(6).

289.    Defendants advertised, offered, or sold goods or services in Arizona and engaged in trade or commerce directly or indirectly affecting the people of Arizona.

290.    Defendants engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts affecting the people of Arizona in connection with the sale and advertisement of "merchandise" (as defined in the Arizona Consumer Fraud Act, A.R.S § 44-1521(5)) in violation of A.R.S. § 44-1522(A).

291.    Defendants' unfair and deceptive acts and practices included, but are not limited to:

a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and the Subclass Members' Private Information, which was a direct and proximate cause of the data breach;

b.    Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the data breach;

c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Subclass Member's Private Information, including duties imposed by the FTC Act 15 U.S.C. § 45, which was a direct and proximate cause of the data breach;

d.    Misrepresenting that they would protect the privacy and confidentiality of Plaintiffs' and the Subclass Members' Private Information, including by implementing and maintaining reasonable security measures;

e.    Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and the Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f.    Omitting, suppressing, and concealing the material fact that they did not reasonably or adequately secure Plaintiffs' and the Subclass Members' Private Information; and

g.    Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs and the Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

292.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendants' data security and ability to protect the confidentiality of consumers' Private Information.

293.    Defendants intended to mislead Plaintiffs and Arizona Subclass Members and induce them to rely on its misrepresentations and omissions.

294.    Had Defendants disclosed to Plaintiffs and the Subclass Members that its data systems were not secure and, thus, vulnerable to attack, Defendants would have been unable to continue in business, and it would have been forced to adopt reasonable data security measures and comply with the law. Defendants was trusted with sensitive and valuable Private Information regarding thousands of patients and consumers, including Plaintiffs and the Subclass. Defendants accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiffs and the Subclass Members acted

reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

295.    Defendants acted intentionally, knowingly, and maliciously to violate Arizona's Consumer Fraud Act, and recklessly disregarded Plaintiffs' and the Arizona Subclass Members' rights. Defendants' numerous past data breaches put it on notice that its security and privacy protections were inadequate.

296.    As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiffs and the Arizona Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including, but not limited to, fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for Defendants' services; loss of the value of access to their Private Information; and the value of identity protection services made necessary by the data breach.

297.    Plaintiffs and the Arizona Subclass Members seek all monetary and non-monetary relief allowed by law, including compensatory damages; disgorgement; punitive damages; injunctive relief; reasonable attorneys' fees and costs; and any other relief that is just and proper.

### Count XII–Violation of the California Consumer Privacy Act, Cal. Bus. & Prof. Code §§ 1798.150, *et seq.* ("CCPA") (On behalf of the California Subclass)

298.    The California Plaintiffs identified above, individually and on behalf of the California Subclass, restate the allegations in Paragraphs 1 through 171 above, as if fully set forth herein.

299.    Defendants violated California Civil Code § 1798.150 of the CCPA by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the

information to protect the nonencrypted Private Information of Plaintiffs and the California Subclass. As a direct and proximate result, Plaintiffs' and the California Subclass' nonencrypted and nonredacted Private Information was subject to unauthorized access and exfiltration, theft, or disclosure.

300.   Defendants are "businesses" under the meaning of Civil Code § 1798.140 because Defendants are "corporation[s], association[s], or other legal entit[ies] that [are] organized or operated for the profit or financial benefit of [their] shareholders or other owners" that "collect consumers' personal information" and are active "in the State of California" and "had annual gross revenues in excess of twenty-five million dollars ($25,000,000) in the preceding calendar year." Civil Code § 1798.140(d).

301.   Plaintiffs and the California Subclass seek injunctive or other equitable relief to ensure Defendants hereinafter adequately safeguard Private Information by implementing reasonable security procedures and practices. Such relief is particularly important because Defendants continue to hold Private Information, including Plaintiffs' and the California Subclass's Private Information. Plaintiffs and the California Subclass have an interest in ensuring that their Private Information is reasonably protected, and Defendants have demonstrated a pattern of failing to adequately safeguard this information.

302.   Pursuant to California Civil Code § 1798.150(b), Plaintiffs mailed a CCPA notice letter to Defendant's registered service agents, detailing the specific provisions of the CCPA that Defendant has violated and continues to violate. If Defendant cannot cure within 30 days—and Plaintiffs believe such cure is not possible under these facts and circumstances—then Plaintiffs intend to promptly amend this Complaint to seek statutory damages as permitted by the CCPA.

303.   As described herein, an actual controversy has arisen and now exists as to whether Defendants implemented and maintained reasonable security procedures and practices appropriate to the nature of the information so as to protect the personal information under the CCPA.

304.    A judicial determination of this issue is necessary and appropriate at this time under the circumstances to prevent further data breaches by Defendants.

### Count XIII–Violation of the California Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56, *et seq.* ("CMIA") (On behalf of the California Subclass)

305.    The California Plaintiffs identified above, individually and on behalf of the California Subclass, restate the allegations in Paragraphs 1 through 171 above, as if fully set forth herein.

306.    Under California's Confidentiality of Medical Information Act ("CMIA"), "persons receiving health care services have a right to expect that the confidentiality of individual identifiable medical information derived by health service providers be reasonably preserved . . . [and it] is the intention of the Legislature in enacting this act, to provide for the confidentiality of individually identifiable medical information, while permitting certain reasonable and limited uses of that information. Cal. Civ. Code Div. 1, Pt. 2.6.

307.    Furthermore, "[e]very provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein." Cal. Civ. Code § 56.101(a).

308.    And "[a]ny provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided[.]" Cal. Civ. Code § 56.101(a).

309.    Thus, "an individual may bring an action against a person or entity who has negligently released confidential information or records concerning him or her[.]" Cal. Civ. Code § 56.36(b).

310.     Here, Defendants are subject to the CMIA because Defendants provide health care, and Defendants created, maintained, preserved, stored, abandoned, destroyed, and/or disposed of medical information regarding Plaintiffs and the California Subclass.

311.     Defendants were negligent because they failed to take reasonable precautions to ensure their data systems were protected. As a result of Defendants' negligence, an unauthorized third-party viewed and obtained Plaintiffs' medical information.

312.     As such, Defendants are liable for damages in an amount to be determined at trial, but not less than the statutorily provided nominal damages of $1,000 for each class member.

### Count XIV–Violation of the California Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.* (On behalf of the California Subclass)

313.     The California Plaintiffs identified above, individually and on behalf of the California Subclass, restate the allegations in Paragraphs 1 through 171 above, as if fully set forth herein.

314.     Under the California Customer Records Act, any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" must "disclose any breach of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82. The disclosure must "be made in the most expedient time possible and without unreasonable delay" but disclosure must occur "immediately following discovery [of the breach], if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." *Id.* (emphasis added).

315.     The data breach constitutes a "breach of the security system" of Defendants.

66

316.     An unauthorized person acquired Plaintiffs' and the California Subclass's personal unencrypted information.

317.     Defendants failed to provide legally compliant notice under § 1798.82(d) to Plaintiffs and Subclass Members. On information and belief, to date, Defendants have not sent written notice of the data breach to all impacted individuals. As a result, Defendants have violated § 1798.82 by not providing legally compliant and timely notice to all Subclass Members.

318.     Defendants' unreasonable delay prevented Plaintiffs and Subclass Members from taking appropriate measures to protect themselves against harm.

319.     Because Plaintiffs and the Subclass Members were unable to protect themselves, they suffered incrementally increased damages that they would not have suffered with timelier notice.

320.     Plaintiffs and the Subclass Members are entitled to equitable relief and damages in an amount to be determined at trial.

### Count XV–Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17000 *et seq*. (On behalf of the California Subclass)

321.     The California Plaintiffs identified above, individually and on behalf of the California Subclass, restate the allegations in Paragraphs 1 through 171 above, as if fully set forth herein.

322.     Defendants engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

323.     Defendants' conduct is unlawful because it violates the California Consumer Privacy Act of 2018, Civ. Code § 1798.100, *et seq*. (the "CCPA"); California's Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq.,* and other state data security laws.

324.    Defendants stored Plaintiffs' and the California Subclass's Private Information in its computer systems and knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with applicable regulations and that would have kept Plaintiffs' and the Subclass's Private Information secure so as to prevent the loss or misuse of that Private Information.

325.    Defendants failed to disclose to Plaintiffs and the Subclass that their Private Information was not secure. However, Plaintiffs and the Subclass were entitled to assume, and did assume, that Defendants had secured their Private Information. At no time were Plaintiffs or the Subclass on notice that their Private Information was not secure, which Defendants had a duty to disclose.

326.    Defendants also violated Cal. Civ. Code § 1798.150 by failing to implement and maintain reasonable security procedures and practices, resulting in an unauthorized access and exfiltration, theft, or disclosure of Plaintiffs' and the Subclass's nonencrypted and nonredacted Private Information.

327.    Had Defendants complied with these requirements, Plaintiffs and the California Subclass would not have suffered damages related to the data breach.

328.    Defendants' conduct was unlawful in that it violated the CCPA.

329.    Defendants' acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, *inter alia*, Section 5(a) of the Federal Trade Commission Act.

330.    Defendants' conduct was also unfair, in that it violated a clear legislative policy in favor of protecting consumers from data breaches.

331.    Defendants' conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. This conduct includes

employing unreasonable and inadequate data security despite its business model of actively collecting Private Information.

332.    Defendants also engaged in unfair business practices under the "tethering test." Its actions and omissions, as described above, violated fundamental public policies expressed by the California Legislature. *See, e.g.*, Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendants' acts and omissions thus amount to a violation of the law.

333.    Instead, Defendants made Plaintiffs' and the California Subclass' Private Information accessible to scammers, identity thieves, and other malicious actors, subjecting Plaintiffs and the Class to an impending risk of identity theft. Additionally, Defendants' conduct was unfair under the UCL because it violated the policies underlying the laws set out in the prior paragraph. 205. As a result of those unlawful and unfair business practices, Plaintiffs and the Class suffered an injury-in-fact and have lost money or property.

334.    The injuries to Plaintiffs and the Class greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

335.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the misconduct alleged in this complaint.

336.    Therefore, Plaintiffs and the Class are entitled to equitable relief, including restitution of all monies paid to or received by Defendants; disgorgement of all profits accruing to Defendants

because of its unfair business practices; a permanent injunction enjoining Defendants' unlawful and unfair business activities; and any other equitable relief the Court deems proper.

## **PRAYER FOR RELIEF**

337.    WHEREFORE, Plaintiffs and the Class members request judgment against Defendants and that the Court enter an order:

a.  Certifying this action as a Class action, defining the Classes as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper and adequate representatives of the Classes requested herein;

b.  Awarding Plaintiffs and Class members appropriate monetary relief, including actual damages, statutory damages, nominal damages, equitable relief, restitution, disgorgement, and statutory costs;

c.  Awarding injunctive and other equitable relief as necessary to protect the interests of the Classes as requested herein;

d.  Instructing Defendants to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiffs and Class members;

e.  Requiring Defendants to pay the costs involved in notifying Class members about the judgment and administering the claims process;

f.  Requiring Defendants to implement enhanced data security measures in order to better protect the Private Information in their possession and control;

g.  Awarding Plaintiffs and Class members prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

h.  Awarding such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

338.    Plaintiffs and the Class members demand a trial by jury on all triable issues.


DATE: December 23, 2025                    Respectfully submitted,

                                                          By:    */s/ Christopher A. Seeger*
                                                            Christopher A. Seeger
    Shauna B. Itri
    **SEEGER WEISS LLP**
    55 Challenger Road 6th Fl.
    Ridgefield Park, NJ 07660
    Tel.: (973) 639-9100
    cseeger@seegerweiss.com
    sitri@seegerweiss.com

    Thomas E. Loeser
    **COTCHETT PITRE & MCCARTHY LLP**
    1809 7th Avenue, Suite 1610
    Seattle, WA 98101
    Tel: (206) 802-1272
    tloeser@cpmlegal.com

    *Attorneys for Plaintiffs*